May it please the Court again, Attorney Carlos Del Valle on behalf of the plaintiff appellates. Your Honor, this appeal is from a district court judgment dismissing a complaint brought by 20 plaintiffs who are graduates from medical schools in Mexico and Santo Domingo. On the grounds that the Puerto Rico Medical Board adopts for the medical examination of those students a passing score that differs from the passing score recommended by the National Board of Medical Examiners for those who take the national test and is 200 points higher than the 500 points recommended by the National Board. Let me go right to the point. Yes, go. Are you comparing apples and oranges? Are they two different tests? They are two different tests, Your Honor. Why would you have different passing scores? You could have arguably different passing scores, but what the Constitution requires is that if you have a passing score that it be calibrated to measure an applicant's fitness and competence for the position. And what we are arguing in this case is that they are both apples in the sense that one test is calibrated and validated by a national agency, but the Puerto Rico passing score is not validated or calibrated by any objective formula. It is simply taken out of thin air by the Puerto Rico Medical Board and imposed on these examinees for the sole purposes of making it difficult for them to pass their examinations. Isn't that based on the fact that they have reached the conclusion that graduates from some of these other foreign schools may not have the same educational skills as those that study in, let's call them U.S. medical schools? First of all, recall that this is a motion to dismiss a complaint. There hasn't been any type of discovery. And just for this opinion, basically he felt he based himself on newspaper articles that showed that certain medical doctors had bought the passing score for this type of examination. But that ground would apply equally to both tests. I mean, if you can buy the passing score, that itself is not sufficiently related to arbitrarily raising the passing score for any of the applicants. Judge Fustef found, it was his belief, that if you artificially raise this passing score to a point where in some years none of the persons taking it ever passed the test, that if you do so, somehow that is related to helping fight corruption in Puerto Rico. And it is our position that even though we know we're bounded by the rational difference review in this case, that there is no rational inference you can make between an arbitrarily passing score and the fight for corruption. It must be validated somehow that they're both related. Just going back to the first question about whether they're the same test, is the content of the tests different? They're similar. No, no, but is it different? I believe it is. There are some differences. There are some differences, yes. So let's just say we had one test, and they picked a score of 500 for one test. Would you say that's irrational? No. Okay. And then for the other test, they just picked 700. Would that be irrational? Well, I was going to curtail my first answer. It would not be irrational as long as the test scores that is chosen for either one or the other is calibrated and validated by objective measures. The due process clause requires that? Or does state Puerto Rico law require that? Both of them. What's the case you have that says due process requires it to be an objective statistical test for what standard for a test? Well, I base myself on the case of Gilbert and on the case of Suarez. But Suarez was the guy they were not letting pass the bar because he was a communist. How does that tell you that they have to have an objective statistical measure for whether to pass a math test or a medical test that can be 500 or 700? Well, I think the same principle applies. You cannot use prejudice or stereotypes in order to deny a person the opportunity to practice a position. And in Suarez, if I may cite it, the court is concerned with the moral quality of the applicants. But it states, a state can require high standards of qualifications, such as good moral character or proficiency in this law, before it admits an applicant to the bar. But any qualifications must have a rational connection with the applicant's fitness or capacity to practice law. And it's that requirement that there be a rational connection between fitness and capacity that gives us the challenge. Can I ask you one other question? Why don't your clients take the easier test? Well, basically, you know that Puerto Rico is mostly Spanish-speaking jurisdiction. And the USMLE, which is the… It's in English. It's in English. Well, the Spanish test is in Spanish. And most Puerto Ricans that study in Mexico and in Santo Domingo study in Spanish. They take all their courses in Spanish, and they study in Spanish. So it is easier for them to take the Spanish test. Furthermore, the Puerto Rico test is only limited to the practice of medicine in Puerto Rico. They cannot go practice in the United States. If they wanted to go practice in the United States, they would have to take the federal test. So it's oriented towards the Puerto Rican medical practice, principally. And that's where they want to practice. But aside from that, it measures the competence. I mean, there's no reason why you cannot have a Puerto Rico test. This test is prepared not by the Puerto Rico board. It's prepared by the National Board of Medical Examiners, the Puerto Rican test. So you assume that in the same way that the national, that the federal test measures their competence and aptness and conformity with SWARE, because there is validation of the procedure for taking the test, that the Puerto Rico test should also reflect those same constitutional values. And there's no dispute on the record that the passing score applying these cases was simply taken from thin air for the purpose of disallowing or making it more difficult for these graduates to practice in Puerto Rico. This, we believe, is a due process violation on the SWARE. We also believe it's an equal protection violation, because the treatment of those, of those graduates that come from schools in Mexico and Puerto Rico, as Josh Torrejas notes, you are concerned that they have a quality of education that makes them amenable to a quality of medical practice in Puerto Rico. But the remedy for that is not an arbitrary passing score. The remedy for that is a test that measures the quality of their preparation for their practice of law. We believe this, that the way this is done, you know, in the manner it is done, which is basically decided by the board in a meeting, what shall be the score, what do you think will be high enough so that all of them, if they do not pass, it shocks the conscience. I mean, there's something done with such hostility towards that particular group that it is a shock, it means it shocks the conscience, a standard. I would like to point out that if the suggested test score of 500, if they provided by the National Board of Medical Examiners for the Puerto Rico exam were applied, each and all of the 20 plaintiffs in this case would have passed the bar in 2010. They would have been practicing medicine in Puerto Rico for over five years. This also has an adverse, this standard also has a terrible adverse social policy effect, because as a result of the diminution of medical doctors in Puerto Rico, basically you have barely 13 or 12,000 doctors to meet the medical needs of about 4 million persons, because most of the doctors who pass a federal exam go to the U.S. to practice law, because they escape the economic implosion going on in Puerto Rico. As a result, you don't have doctors in the hospitals and most of the emergency care is given by a system, by nurses, by paramedics, et cetera. So you have a decrease in the opportunity of the Puerto Rican people to have doctors available for their treatment. This has incidents in malpractice suits that happens against hospitals, the lack of adequate medical treatment. There's a series of social consequences that are associated with this standard adopted by the board. We believe that the court should not grant qualifying immunity to these defendants, because the court since 1956 has stated that these tests must be related to the aptitude and competence of the persons, and there's no question that these tests are not meant to measure that. They are meant to basically dissuade people from going to school in Mexico and Santo Domingo. There are other issues, I don't know if the court wishes me to address them. Basically, the district court also claimed that the 11th Amendment Bar, I mean, the police, that the 11th Amendment Bars, the suit is well known that under Ex Parte Young that you can sue a government agency for prospective relief that is meant to comply with the Constitution and then that you can sue the individual members of the board in their personal capacity for damages, and the complaint in this case is style in a typical Section 1983 manner. Unless you have any other questions for me, I submit the case to you. Thank you. Good morning. May it please the court, Susana Pena-Garican on behalf of Defendant Appellees. I would like to start by drawing the court's attention to several factors that are undisputed as a matter of law. First, the practice of medicine is a highly regulated profession, and importantly, there is absolutely no classification whatsoever in the law, regulation, or the passing score. Also, plaintiffs have accepted that they do not belong to a suspect class. The legislation neither employs a suspect classification or impairs a fundamental right. Pursuant to Law 139, the board, through a resolution, determines the passing grade for the PRMLE, and the passing score for the PRMLE applies to all takers, regardless of where they receive their medical education. Also, plaintiffs have the option of taking the USMLE, because as alleged in the complaint, specifically in paragraph 50 of Docket 25, their universities where they study in international medical schools meet the required eligibility under the ECF-MG, and they are also listed under the IMED listing. Also, as he acknowledged here today, the tests are not exactly the same, they are not similar, they have different criteria. Plaintiffs do not challenge the rationality or the constitutionality of the law. Is there anything in the record that tells us about what the differences are? It's in the record that one of them is to practice medicine in the United States only. No, I understand about the consequence, but just in terms of the content of the test? No. But the content is different? It is different. It's not the same questions, one in Spanish, one in English? No, because if not, there wouldn't be a need to translate the Puerto Rico exam. How about the subject matters, are they different? They have three parts, a clinical, a scientific one, and the last one is a practical one. They have three parts. Each of them has three parts? The Puerto Rico exam has three parts. And what about the English one? In Puerto Rico or in the States? Because Puerto Rico is translated in both languages. The exam in Puerto Rico is available in both languages. There's one that has a 500 cutoff score and one that has a 700 cutoff score. The USMLE. I'm going to get confused, there's one that has 500 and one that has 700. Are the questions in the 500 one the same as the questions in the 700 one? No. And nothing in the record says how they're different? No. But does the record say they're different? Exactly, that's what I'm about to say. The record does not state that they're exactly the same. It doesn't say that they're similar. The allegations in the complaint do not state that they're exactly the same. Does it say they're different? No, it doesn't say. I don't know what we're supposed to do with a complaint. The complaint says applicants for a medical license to study in medical schools located in Puerto Rico usually take a test different than that required by applicants. That's the allegation in the complaint, but usually means this test is still available for anyone who wants to practice medicine in Puerto Rico. You know, I'm really not confused, which is not unusual, but maybe you can help me. It was my understanding, in fact, those are the questions, how I started with your opponent, that the two tests were different. Where did I get that? They are different, and he acknowledges it here today. Okay, please, just one at a time. We agree that they're different. How do we know that they're different? Where does it say that they're different? In what way are they different? Those are three questions. As to content, the allegations have nothing. You know, the allegations do not state that they're different. But you also say they don't state that they're the same. They're not the same. No, but they don't allege that they're the same either. Exactly. They're silent on whether they're the same or different. And when the court asked them today here, they acknowledged the fact that they were not exactly the same. They have different criteria also. They have different criteria, because I cannot take the PRLMLE, which is the Puerto Rico Medical Licensing Examination, if I pass it, I cannot go to the United States and practice medicine. No, that's a consequence of it. That's not the content. Their allegation is that both tests measure the same substantive information. And therefore, they should be scored in a comparable fashion, because if you pass both according to the standards set by the questioners, then they should be similarly measured, because the measurements for competency reflect their capacity to do what they're supposed to do, specifically practice medicine. Your Honor, under the Rational Scrutiny Review, the states can require high standards or qualifications as long as they're related to the fitness and competence. And there is no allegation in the complaint whatsoever that would rebut the presumption of validity under the Rational Scrutiny Review. They have not provided any allegation that would provide a valid reason as to why 500 has to be the passing rate versus the 700. There is absolutely nothing. The fact that they do not pass the exam doesn't provide for unreasonableness as to the passing score. There is... They fail to negate any and all conceivable reasons or basis. Once again, this is a motion to dismiss on the pleadings. Arguments from both counsels have gotten totally confused as to what would go into evidence versus what should go into the pleadings. And that's what I would like for you to address, the inadequacy from your perspective of the pleadings themselves. My answer would be that from the allegations in the complaint, you have two different exams, the USMLE and the PRMLE that are not fair congeners. They're not equal. They're not similar. They have different criterias. And from the allegations in the complaint, plaintiffs have not put forth that they are comparing apples to apples. They are comparing themselves to the takers of the USMLE, which is the United States Medical Licensing Examination. They're not comparing themselves to the people that take the same exam they take. There's two ways that that could be meant and I think that's what we're trying to ask you. One way you could mean that is they're not comparing apples to apples because the consequences of the two tests or even the population of the two tests who take them are different. And I think we understand that and you can tell that from the record. There's another way in which they might not be the same and that's that the content of the tests are different. They don't allege the contents of the tests are the same in their pleadings. They don't say they're different in their pleadings. And at least for me, if the tests were in fact different, it would be fairly easy to say they're not fair congeners. But since we're dealing with this at the pleading stage, I think what I'm trying to figure out is is there anything in the record from the face of the pleadings or the government's answer or anything that would support what you're saying here and I think maybe what the admission was of plaintiffs that the content of the test is different. Well, in the opposition to the, I mean in the motion to dismiss, it was alleged. It was alleged. However, my answer to that would have to be that even assuming that it is plaintiff's duty to put the court in the position to say that they're comparing apples to apples and they did not comply with the pleading duty to place the court in that position to say that they're comparing apples to apples. Do you have a case or something that supports that view? If you did, it would be helpful. I don't have it right now off the top of my head. However, I do believe that it is clear that plaintiff has a burden of pleading their case and sending their case forward to the next step of the litigation and if they are not alleging or their factual allegations do not support a plausible inference that they're comparing apples to apples, we cannot reach that conclusion. They are comparing themselves to others who take a different exam and even assuming that they're similar, although they're not the same, they agreed to that in here before the court, even assuming that they were similar, there is no federal source obliging the court, obliging the state to follow the NBME established passing score. If you analogize it to the PSAT or the SAT, the SAT is a different test every year, but every year it in theory measures the same core competencies. So their position is that these tests may in fact be different but they're measuring the same skill set and therefore they should be scored in accordance with the way that the creators of the test say that a passing rate equals a certain competency. Two things that I have to say as to that. The SAT is not accepted in Puerto Rico for entrance to the colleges in Puerto Rico and the college board, which is the entrance examination in Puerto Rico, is not accepted in the state. I don't think that's a fair comparison. Also, I would have to say that the NBME themselves acknowledge the fact that the state set their own rules and regulations regarding licensing in their own jurisdiction. So I don't have to accept the passing score of an entity, a private entity, and it would be hard to believe that a public policy of the state regarding the passing rate and the fitness and competence of the profession. Those who take the 700 test, the 700 core tests, they can practice here in the states too, can't they? No, they can't. They can't. So you have to take the Puerto Rico test to practice in Puerto Rico. If you pass the Puerto Rico test, which is the P-R-L-M-L-E. The 500 test. No, the 700 test. The Puerto Rico test is a 700 test. Yes, I'm sorry, yes. I can practice in Puerto Rico only. Only in Puerto Rico. I cannot practice in the states. If I take the USMLE, which is the US exam, the 500 point, I can practice in the whole United States. Including Puerto Rico. Including Puerto Rico. What's the rationale of the, just one more time, for the government, of saying that we have this test with a very high score, that you can only practice in Puerto Rico. But if you'd like to take the easier test, you can also practice in Puerto Rico. Your Honor, when you talk, when you refer, the easier test, you mean the Puerto Rico exam. The 500. Can't you practice in Puerto Rico if you pass the 500, or you cannot? Yes. So you can either take this hard test, the test we have to get the 700, then you can practice in Puerto Rico. But Puerto Rico also says, on the other hand, if you'd like to take this easier test, where you pass 500, you can also practice in Puerto Rico. Are you disputing that it's easier? No, that's what I'm disputing. The fact that the calibrating score is 500 doesn't make it easier. So is there anything in the record that supports your assertion here that that is much harder than the 700 test? Nothing in the record. There's nothing in the record that says that one is harder. So what are we supposed to do? They're calibrating scores. They're different. Their pleading, like Judge Thompson suggests, is that under the pleading, the way it comes to us, is the two tests are basically equally challenging. Yet one has a different score than the other. So how are we supposed to deal with that allegation and the complaint? Because the states have been historically delegated the power to regulate issues regarding public policy, public health and safety, and there is no federal source establishing that the states have to follow a certain standard for passing grades or for examinations. But even a rational basis has to be rational. Yeah, but the state doesn't have to provide statistical evidence to support the passing grade. And certainly a test and a passing score for a test is... Well, how do we conclude? What criteria do we use to determine that it's rational? That the state's justification for the differing scores is rational? Rational and related to a legitimate government interest, which is fitness and confidence. But what criteria is there to justify the different scores? Their police power to regulate the profession. And the fact that they're... But a rational explanation usually is a rational explanation. What is the rational explanation? Police power is not rational explanation. That's just the authority. The authority to do so. That doesn't provide the rationality for doing so. Your Honor, it is our position that plaintiffs have not alleged an equal protection claim. We're not before a procedural due process. We're before an equal protection claim where we're not comparing apples to apples. That is our contention. There is no equal protection claim. We are talking about no classification whatsoever. There is no classification. Nowhere. They have not alleged a classification. Nowhere can you find a discrimination against a type of applicant. Schwer or Schwar and Gabbard are not applicable in here. We're not talking about... Plaintiffs do not even... Due process rights are not even attached to mere expectancies. There's not even a property or liberty interest in here. We are talking... There is not even a shock into their conscience. Allegation, outrageous, brutal conduct as barred by the substantive due process. Can I just... So suppose the tests were identical other than the fact that one is given in Spanish and one is given in English. And the scores were differential in the way that they're differential now. But absolutely identical in every respect other than the language they were given in. What would be the rational basis for having the different scores? What would be... Well, I have to go back to talk about the equal protection. We are in an equal protection claim. There's no classification. So I don't have to provide the rationality in the sense that they're not comparing apples to apples. Because both can take it to? Yes. They both have... And they alleged in paragraph 50 of Docket 25, they alleged that they can take the U.S. and leave it. So you're saying there's no classification to begin with? Absolutely nothing. What I'm trying to say is that they failed to put forth an equal protection claim. I got it. There's no equal protection and there's no substantive due process. I know that I think my time is up. I do want to make sure that the Court is aware of the fact that there's an 11th Amendment immunity presented to the Court because any federal judicial order would be an order as to indicating or instructing officials, state officials, as to how to conform the conduct of state law. There's a legislative immunity. The resolution established in the passing score, it bears all hallmarks of traditional legislation. And it's because it is a discretional policy making decision that implicates the practice of medicine in Puerto Rico and affects physicians and the public in general. And there's also qualified immunity. I don't know if the Court has any other questions. I submit the rest of the case. Thank you.